NOT RECOMMENDED FOR PUBLICATION
File Name: 24a0117n.06

No. 23-1470

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | FILED |
|  | ) | Mar 13, 2024 |
| Plaintiff-Appellee, | ) | KELLY L. STEPHENS, Clerk |
|  | ) |  |
| v. | ) | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF MICHIGAN |
|  | ) |  |
| KENNETH D. MITCHELL, | ) |  |
|  | ) |  |
| Defendant-Appellant. | ) |  |
|  | ) | OPINION |
|  | ) |  |

Before: GIBBONS, BUSH, and MURPHY, Circuit Judges.

JOHN K. BUSH, Circuit Judge. A jury convicted Kenneth D. Mitchell of conspiracy to commit healthcare and wire fraud, healthcare fraud, falsifying records involving a federal investigation, and aggravated identity theft. Mitchell's appeal primarily challenges the sufficiency of the evidence that he knowingly and willfully participated in the fraudulent activity. As to this contention, we conclude that sufficient evidence supports the convictions and affirm.

**I.**

**A. Medicare**

Mitchell was indicted for crimes relating to Medicare. The Centers for Medicare and Medicaid Services (CMS) manages Medicare, which provides health insurance coverage to the disabled and individuals aged 65 and older. Medicare reimburses health care providers for certain services provided to eligible patients. To obtain lawful reimbursement under the program, a provider must comply with its rules and procedures. Relevant here, enrolled providers receive a

unique National Provider Identification (NPI) number and must use their own NPI number to file reimbursement claims with Medicare. Medicare reimburses for services only if they were medically necessary and were actually rendered to the identified patient by the provider with the NPI number listed on the claim.

## B. Mitchell's Medical Background

Mitchell and his ex-wife Shazia Malik are podiatrists. They met in podiatry school, married in 2003, but lived apart from each other for many years. Mitchell did his medical residency in Michigan, while Malik maintained a podiatry practice in Montreal.

After completing his residency, Mitchell remained in Michigan and worked for a podiatrist named Rondy Goins. Eventually Mitchell opened his own practice, Mitchell Health Care, followed by a second practice, Quality Foot and Ankle, several years later. Both practices performed the same type of podiatry services and primarily treated Medicare patients. Mitchell was the sole provider at both practices, and he billed Medicare using his NPI number.

The billing, however, was not without some bumps. Over the course of a decade, Mitchell lost his Medicare privileges on three separate occasions: in 2005, when he provided an employee with unauthorized access to patient information; in 2011, when he had an issue with his state medical license; and finally, in 2015, when he billed for patients who were deceased at the time of the claimed services and for patients who purportedly received home care but were actually in the hospital. As to the controversies in 2005 and 2011, Mitchell successfully obtained reinstatement on appeal of the decisions to revoke his privileges. But after the infractions in 2015, CMS denied Mitchell's appeal for reconsideration and his privileges remained revoked.

### C. Alleged Fraud at Issue

In 2015, Mitchell closed his two practices and opened Urban Healthcare Group (Urban). He enlisted Malik, still working in Montreal, to serve as Urban's chief executive officer while he operated its day-to-day operations. Mitchell prepared everything required to set up, incorporate, and register Urban as a company with the state. He also helped Malik become licensed to practice in Michigan: she acquired a social security number, received an NPI number, and enrolled in Medicare as the manager of Urban.

But the primary treating physician at Urban was Mitchell, not Malik. And because Mitchell was again treating Medicare patients, he had to overcome the problem of his program privileges being suspended. He resolved this issue by using Malik's NPI number on Medicare reimbursement claims and listing her as the treating physician even though Mitchell had provided the services.

Urban's deceptive Medicare reimbursement approach was discovered in 2017, when Health and Human Services (HHS) agents, as part of an unrelated investigation, surveilled Rondy Goins attempting to treat an Urban Medicare beneficiary. By then, Goins's Medicare privileges had been revoked, and he had also lost his podiatry license. After HHS agents confronted Goins, he agreed to cooperate with their investigation into Urban.

HHS agents created a fictitious Medicare patient named Aaron Georges and directed Goins to meet with Mitchell on September 27, 2017, to provide him with documentation showing that Goins had "treated" Georges earlier that month. As a result of that meeting, Mitchell provided Goins with a $750 check from Urban, with "consulting" written on the memo line. Such a payment was not unusual. Indeed, in the preceding seven months, Urban had issued Goins nineteen checks for his alleged treatment of Urban patients, all of which Mitchell had signed.

Other claims that Urban submitted to Medicare included: a visit to a patient named Hideko Graham, whom agents prevented Goins from treating in August 2017; four claims for another patient, Scott Compton, which included purported treatment in October 2017, though he had died in July 2017; and a second visit with the fictitious Georges, which occurred on November 7, 2017. These submissions, and several other claims that Urban remitted to Medicare, cited Malik as the treating physician, even though she remained primarily in Canada, visited Urban only two to three days a month, and by her own admission, was not the treating physician for Urban. In fact, Malik testified that she only occasionally assisted Mitchell in seeing patients.

On June 7, 2018, HHS agents executed a search warrant at Urban's office. There, they found several records indicating that Urban documented patients seen by Goins but sought reimbursement from Medicare using Malik's NPI number. A grand jury returned an indictment against Mitchell on June 21, 2018, charging him with one count of conspiracy to commit healthcare and wire fraud, and three counts of healthcare fraud. On June 28, 2018, CMS suspended Urban's Medicare privileges.

On July 25, 2018, CMS sent a letter to Urban, addressed to Malik, notifying her of Urban's alleged fraudulent activity. Urban responded in a letter to CMS on August 8th, asking for reinstatement of its Medicare privileges. Enclosed with Urban's letter were attestations from facilities that Mitchell frequented, which declared that Malik provided treatment to patients residing in those facilities. However, Malik testified that she was not aware of either the suspension letter sent to her from CMS or the letter from Urban (purportedly signed by her) to CMS requesting reinstatement. According to Malik, she first became aware of Urban's alleged fraudulent activities after she received a target letter from the government in March 2019.

Upon receipt of that notification, she agreed to cooperate with the government's investigation in exchange for immunity.

### D. Procedural History

After a trial in August 2022, a federal jury convicted Mitchell on one count of conspiracy to commit healthcare and wire fraud, three counts of healthcare fraud, one count of falsifying records involving a federal investigation, and one count of aggravated identity theft. The jury acquitted Mitchell on one charge of witness tampering. The district court sentenced Mitchell to 84 months' imprisonment and ordered him to pay $949,316.47 in restitution. He timely appealed.

## II.

We review challenges to the sufficiency of evidence de novo. *See United States v. Collins*, 799 F.3d 554, 589 (6th Cir. 2015). Still, the defendant "bears a very heavy burden." *Id.* (quoting *United States v. Davis*, 397 F.3d 340, 344 (6th Cir. 2005)). In evaluating a sufficiency challenge, we must affirm a conviction if "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). "We do not weigh the evidence, assess the credibility of the witnesses, or substitute our judgment for that of the jury, and circumstantial evidence alone is sufficient to sustain a conviction, even if it does not remove every reasonable hypothesis except that of guilt[.]" *United States v. Hendricks*, 950 F.3d 348, 352 (6th Cir. 2020) (cleaned up). "This familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Jackson*, 443 U.S. at 319.

On appeal, Mitchell contends that there was insufficient evidence to support his conviction for conspiracy to commit healthcare and wire fraud, healthcare fraud, falsification of records, and

aggravated identity theft. Appellant Br. at 14–27. In addition, Mitchell argues that the court erred in trying the witness tampering charge with the other counts in the indictment. *Id.* at 28–30. We address each contention in turn.

### III.

#### A. Sufficiency of the Evidence

##### 1. Aggravated Identity Theft

Mitchell makes two sufficiency-of-the-evidence arguments regarding his conviction for aggravated identity theft: (1) that the indictment failed to allege that he committed an enumerated predicate felony as required by 18 U.S.C. § 1028A, and (2) that the government failed to prove that his use of another's identity was the "crux" of his fraudulent conduct. Appellant Br. at 15–18. These arguments on appeal, however, are different from the grounds Mitchell relied upon below in support of his Rule 29 motion for acquittal. He therefore has waived his challenge to the sufficiency-of-the-evidence arguments that he now brings before this court.

"Although specificity of grounds is not required in a Rule 29 motion, where a Rule 29 motion is made on specific grounds, all grounds not specified are waived[.]" *United States v. Dandy*, 998 F.2d 1344, 1356–57 (6th Cir. 1993) (citation omitted). For example, in *United States v. Ramer*, 883 F.3d 659 (6th Cir. 2018), we held that "a Rule 29 motion for judgment of acquittal that specifically raises the issue of venue will *not* be construed as a general challenge to the government's proofs" and therefore "such a motion will waive all other grounds not specified in the motion." *Id.* at 682 (emphasis in original). That is because the "specification of grounds in the motion is an indication that counsel has evaluated the record and has these particular reasons for his motion." *Dandy*, 998 F.2d at 1357 (quoting *United States v. Rivera*, 388 F.2d 545, 548 (2d Cir. 1968)).

In Mitchell's Rule 29 motion before the district court, he argued that insufficient evidence sustained the aggravated-identity-theft conviction because there was "no testimony or evidence that it was Dr. Mitchell that signed the name of Dr. Malik" regarding the letter that was sent to CMS, seeking reinstatement of her Medicare privileges. R. 130 at PageID 1770–71. That is the only argument that Mitchell made regarding the aggravated-identity-theft charge. He did not mention, even briefly, either of the arguments that he now makes on appeal—that the indictment failed to allege an enumerated predicate felony or that the government failed to prove that the identity theft was the "crux" of his illegal conduct. Mitchell's omissions below are fatal to his arguments on appeal. As made clear by the precedent cited above, when a defendant asserts specific grounds for his Rule 29 motion, he waives all other grounds for relief. We therefore hold that Mitchell waived his current arguments concerning the sufficiency of the evidence on the aggravated-identity-theft charge.[1]

## 2. Conspiracy to Commit Healthcare and Wire Fraud

Next, Mitchell asserts that the government failed to present sufficient evidence for a rational juror to convict him of conspiracy to commit healthcare and wire fraud. Specifically, he contends that the government failed to prove that (1) either Goins or Malik knowingly joined the

---

[1] Mitchell makes a brief argument that the aggravated-identity-theft charge should be vacated because the jury was not instructed that it needed to find that the use of Malik's name was the "crux" of the fraudulent conduct. Appellant Br. at 18–19. But the instruction that the court gave is exactly the same as the proposed instruction Mitchell offered to the court. *Compare* R. 112 at PageID 755–57, *with* R. 137 at PageID 2179–81. And Mitchell never objected to the instruction. R. 137 at PageID 2199. Accordingly, we also conclude that Mitchell waived any challenge to the legality of the instructions. *See United States v. Wooten*, 39 F. App'x 83, 89 (6th Cir. 2002) ("Given that the defense was jointly responsible for drafting the instruction and did not object to the instruction, we conclude that the defendant waived a challenge to the legality of the instructions."); *see also United States v. Natale*, 719 F.3d 719, 729 (6th Cir. 2013).

charged conspiracy, and (2) Mitchell had a meeting of the minds with either Goins or Malik to commit the substantive crimes. Appellant Br. at 22. Neither argument is persuasive.

To convict a defendant of conspiring to commit healthcare and wire fraud, the government must prove "(1) the existence of an agreement to violate the law; (2) knowledge and intent to join the conspiracy; and (3) an overt act constituting actual participation in the conspiracy." *United States v. Bailey*, 973 F.3d 548, 564–65 (6th Cir. 2020) (quoting *United States v. Hughes*, 505 F.3d 578, 593 (6th Cir. 2007)). "The agreement, intent to join it, and participation can all be inferred from acts done with a common purpose." *United States v. Searan*, 259 F.3d 434, 442 (6th Cir. 2001) (citation omitted).

The evidence sufficiently demonstrated that Mitchell and Goins had a conspiratorial agreement to defraud Medicare. The government presented the following evidence to the jury:

- Mitchell knew Goins for years and worked for his practice in the early 2000s;
- Before Goins and Mitchell worked together at Urban, Goins lost his medical license to practice podiatry in the state of Michigan, and, in 2012, had his Medicare billing privileges revoked;
- Goins started seeing patients on behalf of Urban in 2016;
- Goins submitted documentation regarding patients he treated on Urban's behalf to Mitchell;
- Urban billed Medicare for patients treated by Goins using Malik's NPI number;
- From March 2016 to September 2017, Urban provided Goins with nineteen checks that were signed by Mitchell and worth approximately $13,000 in total.

To be sure, Mitchell testified that "Goins did not work for Urban." R. 135 at PageID 1905. Mitchell also disputed that Goins had seen patients on behalf of Urban and that Urban had billed Medicare for services provided by Goins. *Id.*; R. 136 at PageID 2031–32. But a rational jury could have disbelieved Mitchell's testimony in light of all of the other proof. *See United States v.*

*Iossifov*, 45 F.4th 899, 916 (6th Cir. 2022), *cert. denied*, 143 S. Ct. 812 (2023) (explaining that in considering a sufficiency-of-evidence argument, the court must give "due deference" to a jury's decision to discredit a defendant's testimony).

The evidence of Mitchell and Goins's agreement to defraud Medicare was enough for a rational jury to find that the two agreed to enrich themselves by fraudulently billing Medicare for services Goins provided, even though he had been stripped of his medical license and had long been excluded from Medicare.[2] We therefore hold that sufficient evidence supports Mitchell's conviction for conspiracy to commit healthcare and wire fraud.

### 3. Healthcare Fraud

Mitchell also contends that the jury had insufficient evidence to find that he "knowingly and willfully" used Malik's information to bill Medicare to commit three counts of healthcare fraud. Appellant Br. at 25–26. We do not find this challenge persuasive either.

Section 1347 of title 18 of the United States Code makes it a federal crime for individuals "in connection with the delivery of or payment for health care benefits, items, or services," to "knowingly and willfully execute[] . . . a scheme or artifice" "to defraud any health care benefit program" or "to obtain, by means of false or fraudulent pretenses, representations, or promises" money from the program. 18 U.S.C. § 1347. Thus, to convict a defendant of healthcare fraud, the government must prove the following: the defendant "(1) knowingly devised a scheme or artifice to defraud a health care benefit program in connection with the delivery of or payment for health care benefits, items, or services; (2) executed or attempted to execute this scheme or artifice to

---

[2] Mitchell insists that the government cannot point to any evidence of a meeting of the minds between Goins and Mitchell before Goins began cooperating with the government. Appellant Br. at 23–24. The record reveals otherwise. Goins did not begin cooperating with the government until after August 14, 2017, which was well after Goins had begun seeing patients on behalf of Urban (in 2016) and had received checks from Mitchell (as early as March 2016).

defraud; and (3) acted with intent to defraud." *United States v. Anderson*, 67 F.4th 755, 770 (6th Cir. 2023) (per curiam) (citations omitted).

"Direct evidence of fraudulent intent is not required." *Id.* at 770 (citation omitted). Instead, circumstantial evidence may be considered to "infer intent from evidence of efforts to conceal the unlawful activity, from misrepresentations, from proof of knowledge, and from profits." *Id.* (quoting *United States v. Persaud*, 866 F.3d 371, 380 (6th Cir. 2017)). And regardless of whether Mitchell was actually the person who devised the fraudulent scheme, he is still guilty of healthcare fraud if the evidence supports that he "contributed to the execution of the scheme with the intent to defraud." *United States v. Hunt*, 521 F.3d 636, 645 (6th Cir. 2008).

As to the first count, the jury heard testimony from HHS Agent Tyson Howard, who stated that he witnessed Goins attempt to treat a patient named Graham at an Ann Arbor apartment complex on August 14, 2017. That treatment was later documented, and Urban submitted a claim to Medicare declaring that Malik—not Goins—provided the treatment to Graham. Malik corroborated that evidence with her testimony that she was in Canada on that day and did not provide the treatment to Graham.

As to the second count, the government presented evidence that included Urban's reimbursement claims to Medicare for Scott Compton's treatment, which stated that Malik rendered care on October 2, 2017. However, Agent Howard testified that Compton died earlier that year. In addition, Malik told jurors she was in Canada on that date and did not provide treatment to Compton.

Lastly, regarding count three, Agent Howard testified that Aaron Georges was not a real person. Rather, Howard invented Georges so that Goins, who was cooperating with Howard's investigation, could provide a treatment record to Mitchell. Urban billed Medicare for the

September 7, 2017 treatment provided to the fictitious Georges, with the documentation that Goins gave to Mitchell. Furthermore, not only did Urban bill Medicare for the September 7th treatment, but even after Goins ceased communication with Mitchell. Urban also submitted a bill to Medicare for a second treatment to Georges on November 7, 2017. Both claims listed Malik as the provider.

Still, Mitchell asserts that the government's evidence is not enough because "there was no evidence that [he] knew of [the] particular billings" underlying these counts of healthcare fraud and thus that he "could not have knowingly and willfully acted as to these three counts." Appellant Br. at 26. However, the evidence presented to the jury was enough to support a finding that Mitchell was aware of and caused the claims to be submitted to Medicare unlawfully.

As an initial matter, Mitchell prepared all of the documentation to ensure Malik was licensed and approved to bill Medicare. Thus, it is reasonable for the jury to conclude that in doing so, he became aware of the Medicare rules. Also, the jury reasonably could conclude that Mitchell knew the rules because he himself had been a Medicare provider for many years. And those rules state, in pertinent part, that (1) only the provider who is licensed to bill Medicare will do so by providing an NPI number, and (2) the NPI number must be that of the treating provider. There was evidence that Urban submitted reimbursement claims to Medicare that listed Malik as the treating physician, even though her testimony and the other evidence demonstrate that she did not act as the primary provider for Urban at any point. And there was proof that Mitchell was responsible for the submission of claims. Specifically, David Moore, an employee of Precise Medical Billing—the company that submitted Urban's claims to Medicare—told the jury that Mitchell personally handed the Medicare paperwork to him for submission. Those claims included bills where Goins was the treating physician, but Malik's name was listed as the treating provider.

All of this evidence supported the jury finding that Mitchell knowingly caused the bills to be submitted to Medicare fraudulently.

Thus, the trial record included sufficient evidence such that a reasonable juror could convict Mitchell of healthcare fraud. *See Tibbs v. Florida*, 457 U.S. 31, 45 n.21 (1982) (It is "[t]he trier of fact, not the appellate court, [who] holds 'the responsibility . . . fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts.'") (quoting *Jackson*, 443 U.S. at 319).

### 4. Falsification of Records

Finally, Mitchell challenges the finding that he knowingly committed one count of falsification of records involving a federal investigation, in violation of 18 U.S.C. § 1519. Appellant Br. at 26–27. An individual is guilty of falsifying records if he "knowingly alters, destroys, mutilates, conceals, covers up, falsifies, or makes a false entry in any record, document . . . with the intent to impede, obstruct, or influence [a federal] investigation[.]" 18 U.S.C. § 1519.

The jury heard evidence that CMS suspended Urban from billing Medicare and sent Malik a letter at Urban's address notifying her of the suspension. Malik testified that she was unaware of the letter or the suspension. On August 8, 2018, Urban sent a letter to CMS asking for the suspension to be lifted. The letter was purportedly signed by Malik, but she testified that the signature was not hers. Further, she told the jury that she was unaware of the letter and was not even in the United States on the date that it was mailed from a Detroit zip code. Moreover, enclosed with the letter were several attestation papers signed by representatives from facilities who stated that Malik had provided care to patients there. But it was Mitchell who personally requested the representatives sign the letters during a previous visit, telling the attestators that the letters were required to be signed just as "red tape." R.129 at PageID 1627.

This proof undercuts Mitchell's testimony that he did not write the letter. The countervailing proof supports the jury's reasonable decision to discredit him and return a conviction. Because we "will not reweigh the evidence or second-guess the jury's decision to disbelieve a witness," *United States v. Lang*, 717 F. App'x 523, 546 (6th Cir. 2017), we find that the evidence provided to the jury, and its disbelief of Mitchell's testimony denying involvement, is sufficient to conclude that Mitchell, in fact, submitted the letter to CMS, and thus violated 18 U.S.C. § 1519. *See also Iossifov*, 45 F.4th at 916.

## B. Witness Tampering

Mitchell contends that the district court erred in trying the witness tampering charge with the other charges because it was "highly prejudicial." Appellant Br. at 28–30. Because Mitchell raises his misjoinder claim for the first time on appeal, we review for plain error only. *United States v. Soto*, 794 F.3d 635, 655 (6th Cir. 2015) ("[P]lain-error review applies to claims of misjoinder raised for the first time on appeal."). To succeed on plain error review, Mitchell must show "(1) error (2) that was 'obvious or clear,' (3) that 'affected [his] substantial rights[,]' and (4) that 'affected the fairness, integrity, or public reputation of the judicial proceedings.'" *United States v. Vonner*, 516 F.3d 382, 386 (6th Cir.2008) (en banc) (quoting *United States v. Gardiner*, 463 F.3d 445, 459 (6th Cir. 2006)). Mitchell's claim fails because he did not show that the alleged misjoinder affected his substantial rights.

We have held that when a jury acquits a defendant of an allegedly misjoined claim, this shows that the jury was able to make "an individualized determination of [the] defendant's guilt as to each count," such that a defendant cannot make "the requisite strong showing of prejudice required to warrant reversal." *Id.* (internal quotations omitted); *see also United States v. Bibby*,

752 F.2d 1116, 1122 (6th Cir. 1985) (explaining that acquittal on misjoined charges is evidence that the defendant was not prejudiced by the joinder).

Here, Mitchell fails to show that he was prejudiced by joinder of the charges. Although the jury convicted him of the fraud-based charges, it acquitted him of the witness-tampering charge. Accordingly, we conclude that any alleged error did not affect the integrity of the proceedings, or Mitchell's substantial rights, and thus Mitchell's claim fails.

## IV.

For the foregoing reasons, we **AFFIRM**.